UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| WENDELL RAKES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-321-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN COLVIN, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff, Wendell Rakes, seeks judicial review pursuant to 42 U.S.C. § 405(g), of an administrative decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons stated herein, the Court will deny Rakes' Motion for Summary Judgment [R. 9], and grant that of the Commissioner [R. 10].

**I**

Rakes alleges disability beginning on January 15, 2011. [Tr. 208-211.] His application was denied initially and upon reconsideration. [Tr. 82, 94.] A hearing was conducted by Administrative Law Judge ("ALJ") Don Paris on November 30, 2012, where both Rakes and Linda Tabor, a vocational expert, testified. [Tr. 34-69.] A second hearing was held on February 5, 2013. [Tr. 24-29.]

Rakes was forty-two years old as of his alleged onset of disability date. [Tr. 38.] He is not married, but lives with his girlfriend. [Tr. 38-39.] He possesses a high-school education, and

can both read and write.  [Tr. 39-40.]  Rakes spent his career working as a fabricator welder.  [Tr. 40-41.]  Rakes alleges disability due to the following physical impairments: numb right arm, back, neck, and knee pain, various back issues, a steel rod in his right leg, and nerve damage in both arms.  [R. 9-1 at 2.]  Rakes only argues the ALJ erred with regard to decisions made about his lumbar spine.  Despite the aforementioned ailments, Rakes does drive, cook, clean laundry, load the dishwasher, grocery shop, deer hunt (for limited periods of time and close to his house), drive a four-wheeler and "piddle" on his farm.  [Tr. 27; 39; 50-56.]

In evaluating a claim of disability, the ALJ conducts a five-step analysis.  *See* 20 C.F.R. § 404.1520.[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R. § 404.1520(d).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, the ALJ issued his written decision on February 25, 2013. [Tr. 12-18.] At Step 1, the ALJ found that Rakes had not engaged in substantial gainful activity since that alleged onset date. [Tr. 14.] At Step 2, the ALJ found that Rakes had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status post discectomy and fusion surgeries; history of open reduction and internal fixation of the right tibia." [*Id.*] At Step 3, the ALJ concluded that Rakes did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)," so the analysis continued to the next step. In so concluding the ALJ specifically rejected the notion that either listing 1.02 or 1.04 apply. [Tr. 15.] At Step 4, the ALJ concluded that Rakes had an RFC to:

> perform a range of light work as defined in 20 CFR 404.1567(b) as follows: lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk six hours of an eight hour day; sit six hours of an eight hour day; no more than frequently push or pull, including operation of hand controls; no more than frequently climb ramps and stairs, and

3

occasionally ladders, ropes or scaffolds; no more than frequently kneel or crouch; occasionally crawl; no more than frequently reach in any direction, including overhead; and he should avoid exposure to extreme cold and to full body vibration. He also requires a sit/stand option with no prolonged standing or walking in excess of half an hour without interruption, and no excessive overhead reaching.

[R. 15.] With these limitations in mind, the ALJ determined that Rakes was not capable of performing his past, relevant work. [Tr. 17.] Finally, at Step 5, the ALJ adopted the opinion of the vocational expert, that there were significant numbers of jobs in the national economy that Rakes could perform. [Tr. 17-18.] As a result, the ALJ concluded that Rakes was not disabled. [Tr. 18.] The Appeals Council found no reason for review. [Tr. 1-3] Rakes now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Rakes now argues that the ALJ's denial is not supported by substantial evidence for two reasons: (1) The ALJ failed to properly apply Listing 1.04 in light of the medical evidence, and (2) The ALJ erred in finding that Rakes was not credible.  [R. 9-1.]  Because the ALJ's decision is supported by substantial evidence, his decision will be affirmed.

**A**

Rakes first argues he should have been found disabled at Step Three of the disability analysis because his condition qualifies as an impairment under Listing 1.04.  [R. 9-1 at 6-9.]  At Step Three the ALJ is tasked with determining whether a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).  If the impairments do "meet or equal" one of those listed impairments, the claimant is deemed "disabled."  *Id*.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990))

5

(emphasis in original).  For a claimant to demonstrate that his "impairment is the *medical equivalent* of a listing," he must demonstrate that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414-15 (6th Cir. 2011) (citing 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a)).  As the Sixth Circuit has explained, "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Id*.  Rakes had the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  "To meet that burden [Rakes] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*.

Rakes now takes issue with the ALJ's discussion of whether his impairment meets or equals listing 1.04, which is reprinted below:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> > OR
>
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> > OR

>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1 (*Social Security Listing 1.04*). In his written decision, the ALJ addressed whether Rakes' impairments rendered him disabled under this listing as follows:

>The medical evidence establishes spinal impairments, but the evidence does not satisfy the criteria of listing section 1.04. Specifically, the record contains no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.

[Tr. 15]. Simply, the ALJ concluded that Rakes did have disorders identified under the first paragraph of listing 1.04, but that he did not satisfy any of the three additional criteria in paragraphs A-C.[2] [*Id*.] In his discussion at Step Three, the ALJ did not provide citation to any exhibits to support this conclusion, nor did he discuss any medical evidence. Rather, he simply provided his conclusion. Rakes suggests this is insufficient. [R. 9-1 at 7, 10-11.]

In *Reynolds*, a case cited by Rakes in support of his argument that the ALJ's handling was insufficient, the ALJ began his Step Three analysis by stating, "[c]laimant does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." 424 Fed.Appx. at 415. The ALJ then dutifully undertook a full page analysis of Listing 12.04, evaluating the evidence of the record under the criteria of that listing. However, aside from mentioning section 1.00 in the introduction, the ALJ never referenced Listing 1.04 or discussed why the impairment of the claimant did not meet that listing criteria. The court found that the ALJ had erred in omitting a discussion of Listing 1.04 because, "[p]ut simply, he skipped an entire step of the necessary analysis." *Id*. at 416. The Court reflected on

---

[2] Rakes only argues that he meets the listing under 1.04A.

7

what the ALJ had actually needed to do:

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id*. at 416 (citations omitted). In cases following *Reynolds,* the Sixth Circuit has been inconsistent in how much analysis they require at Step Three. In *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470 (6th Cir. 2012), the ALJ failed to "make specific findings on the issue of whether [Malone's] impairments were equivalent" to a listed impairment. The Court noted that the burden at Step Three was on Malone, and that Malone had not argued that he had a listed impairment at the hearing. Noting that the ALJ had "considered all of the symptoms that were consistent with the medical evidence in determining his [RFC]," the panel affirmed despite the summary analysis at Step Three. *Id*. In *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 414 (6th Cir. 2014), the Court concluded that the ALJ erred at Step Three, finding that his summary explanation was inadequate.[3] The ALJ had cited to exhibits upon which he depended, but the Court concluded there was room for interpretation about what was contained within those cited exhibits. *Id*. at 416. The Court explained:

> [T]he ALJ was obliged to do more than simply cite the exhibit. Under these circumstances, a statement of "the reasons or basis" for the material finding would include a statement of which portions of the exhibit the ALJ relied on and why they supported a finding that Burbridge did not manifest the required deficits.

*Id*. (citing *Reynolds,* 424 Fed.Appx. at 414). In dissent, Judge Moore agreed that the ALJ's analysis was "cursory" and not a "model to be followed," but concluded that the deferential standard of review made remand inappropriate. *Id*. at 417. In *Forrest v. Comm'r of Soc. Sec.*,

---

[3] "In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F)."

8

the ALJ stated only that "[t]he record does not contain any clinical findings or diagnostic laboratory evidence of an impairment or combination of impairments that would meet the requirements for any listed physical impairment." 591 F. App'x 359, 364 (6th Cir. 2014). The Court found this sufficient, noting that Forrest had not argued at the hearing that he met a listing, and that the ALJ had made "sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id*. at 366 (additional citations omitted). The *Forrest* Court further found that even if the ALJ's justifications at Step Three were insufficient, the error would be harmless. *Id*. at 366. *Cf. Reynolds*, 424 F. App'x at 416. ("The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii).") Of all the aforementioned cases, the ALJ's explanation in *Forrest* seems most similar to the one in this case. Like ALJ Paris, the ALJ in *Forrest* noted only that the record did not support the listing. As the Sixth Circuit did in that case, this Court will look to the rest of the ALJ's decision to determine if this conclusion is supported by substantial evidence.

Rakes argues that the following objective medical evidence demonstrates that he satisfied Listing 1.04A from February 2011 through at least May 7, 2012:

> Dr. Kirk identified pain, reduced range of motion in the lumbar spine and positive straight leg raising in February 2011. In June 2011, Dr. Knetsche identified increasing weakness in Mr. Rakes' legs. In March 2012, Dr. Pellant found weakness in both ankles and noted Mr. Rakes felt like he had decreased muscle tone in his right leg. (485, 488). Dr. Pellant also noted on that visit that Mr. Rakes had decreased sensation in the bilateral L3, L4 dermatomal distribution. (487). Dr. Knetsche, also in March 2012, found reduced reflexes in the right ankle. (517). Earlier, in 2011, Dr. Knetsche described difficulty with balance when walking in the dark with gait disturbance and rapid fatigue walking short distances. Dr. Knetsche wrote that Mr. Rakes' pain was made worse with sitting, standing and walking. (389).

9

[R. 9-1 at 7.]

Amongst other criteria, listing 1.04A requires evidence of a "positive straight-leg raising test (sitting and supine)." In his motion, Rakes' states that in February 2011, Dr. Kirk "identified pain, reduced range of motion in the lumbar spine and positive straight leg test."[4]  [R. 9-1 at 7.] Dr. Kirk's examination notes indicate "pos L SLR with numbness of foot at 30 degrees." [Tr. 331.] While the ALJ did not discuss Dr. Kirk's examination notes, he did mention that Rakes had a "positive straight leg raising on the left" in September of 2012. [Tr. 16 (citing 21F).] As the Government notes, there are also multiple pieces of evidence in the record demonstrating that Rakes had negative (normal) straight-leg tests. *See* R. 10 at 9 (citing Tr. 381 (March 2011), Tr. 478 (March 2012), Tr. 486 (December 2011), Tr. 583 (December 2012)). As the record stands, there is no indication that Rakes ever had positive straight leg tests in both the sitting and supine positions. Again, the burden is on Rakes to demonstrate compliance with all criteria in the listing at Step Three.

Rakes also refers the Court to reports from both Dr. Knetsche and Dr. Pellant wherein those doctors comment on the weakness in Rakes' legs and ankles.[5]  [R. 9-1 at 7.] Dr. Knetsche also described Rakes' apparent difficulty with balance. [*Id.* (citing Tr. 389).] These reports appear to be based on Rakes own, subjective reports. *See*, e.g. Tr. 446 ("Patient states he believes he has decreased muscle tone in his right leg.") Such subjective evidence cannot be used to support a finding that he meets the listing. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1

---

[4] Rakes provided an incorrect citation to the record in support of this proposition. *See* R. 9-1 at 3 (citing to Tr. 369-370). The record to which he actually intended to refer is available at Tr. 330-334.
[5] Again, Rakes provided an incorrect citation to the record in support of this proposition. *See* R. 9-1 at 7 (citing to Tr. 485, 487, 488). It appears that he was actually referring to records at Tr. 350, 446, 449.

10

("These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., "He says his leg is weak, numb.") Rakes' weakness in his legs is a point that the ALJ discussed in his decision. The ALJ recognized that Rick Pellant,, D.O. had examined Rakes in March 2012 and noted "weakness in with left ankle dorsiflexion and right knee extension and ankle dorsiflexion." [Tr. 16 (citing Tr 446-471.)]

Finally, the ALJ refers to a 2012 MRI which "does not describe nerve root or spinal cord contract or impingement." [Tr. 16 (citing Exhibits 24F, 25F).] This is objective medical evidence that belies Rakes' claim that he qualifies under listing 1.04A. Rakes does not acknowledge that the ALJ discussed this finding, nor does he address the observation.

ALJ Paris cited the listing at issue and stated his conclusion that the evidence did not satisfy the specific criteria laid out in the listing. [Tr. 15.] Rakes did not argue for the application of Listing 1.04 at the hearing at this matter. *See* Tr. 24-70. The ALJ did provide commentary in his RFC discussion that sheds light on his Step Three finding. *See Malone*, 507 F. App'x at 472-473 (Responding to Step Three objection by referring to ALJ's medical discussion in RFC analysis.) The burden is on Rakes to demonstrate that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Rakes] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*. Even at this point, Rakes has failed to direct the Court to evidence in the record demonstrating that he met all the criteria in listing 1.04A.

While the ALJ's discussion at Step Three might leave something to be desired, it is not insufficient to the point of inhibiting meaningful judicial review. The Court is also hesitant to require the ALJ to scour the record to prove the negative ("the record contains no evidence of nerve root compression") when the burden is on Rakes. Ultimately, when one incorporates the ALJ's discussion of Rakes impairments in his RFC findings, it cannot be said that his conclusion that listing 1.04A did not apply is unsupported by substantial evidence.

**B**

Rakes next contends that his own allegations were improperly rejected by the ALJ without a proper credibility determination under 20 C.F.R. § 404.1529. In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board,

12

>  etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

ALJ Paris cited the correct test and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [Tr. 16]. The ALJ noted that while the record "documents degenerative disc disease and surgeries," Rakes' own daily activities support his RFC limitations. The ALJ noted that in July 2012 Rakes was identified in medical records as a "farmer." [Tr. 17.] At that same time, Rakes had been injured when a 700-pound steer fell on him while he was loading it into a cattle trailer. [Tr. 17; 27.] The ALJ further noted that Rakes testified at the hearing that "he takes no pain medication, and that he cooks, does laundry, washes dishes, waters the flowers outside, cleans up outside the house, goes grocery shopping with his girlfriend, watches television, and occasionally hunts." [Tr. 17.] He specifically noted that Rakes had shot a deer the week before his hearing and had used a four-wheeler to recover it. [*Id*.]

In his motion for summary judgment, Rakes attempts to discredit the evidence upon which the ALJ depended in finding his testimony not credible. First, Rakes takes issue with the

13

ALJ's reference to the fact that he does not take pain relievers. He reiterates his testimony from his hearing—that they are not useful to him. [R. 91- at 9 (citing 97-98.)] Second, he contends that he is not a farmer, but only "piddled around [the farm] back in the summer. [R. 9-1 at 10 (citing Tr. 66).] Respectfully, assisting in loading a 700-pound steer into a cattle trailer is not "piddling." Third, he notes that the deer hunting to which the ALJ referred took place only 100 yards behind his own house, and lasted only 15 minutes. [R. 9-1 at 9 (citing to Tr. 98-99).] The fact that the hunting was close to his home and did not take much time does not change the fact that Rakes continues to hunt and that he drove a four-wheeler down to pick up his spoils.

ALJ Paris' analysis employed the proper test and directly addresses a number of the factors that the agency has bound itself to consider. In so doing, ALJ Paris has conducted a proper credibility determination, which the Court's independent review has found to be reasonable and supported by substantial evidence from the record.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Rakes not disabled is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Rakes' motion for Summary Judgment [R. 9] is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment [R. 10] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 8th day of September, 2015.

Signed By:
Gregory F. Van Tatenhove
United States District Judge

15